24CA1478 Peo v Lucero 12-04-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1478
Mesa County District Court No. 95CR258
Honorable Matthew D. Barrett, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Fred R. Lucero,

Defendant-Appellant.

ORDER AFFIRMED

Division V
Opinion by JUDGE PAWAR
Freyre and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 4, 2025

Philip J. Weiser, Attorney General, Paul Koehler, Senior Counsel, Denver,
Colorado, for Plaintiff-Appellee

Fred R. Lucero, Pro Se

¶ 1    Defendant, Fred R. Lucero, appeals the postconviction court's order summarily denying his motion for additional DNA testing under section 18-1-413, C.R.S. 2025.  We affirm.

## I.    Background

¶ 2    Lucero was convicted in 1996 of two counts of first degree murder for stabbing his ex-girlfriend and a male victim to death in the male victim's apartment, as well as one count of retaliation against a witness or victim.  The following facts are taken from the postconviction court's order at issue here, and they are not challenged on appeal.

¶ 3    In the weeks leading up to the murders, Lucero had multiple altercations with the male victim because Lucero believed the male victim and his ex-girlfriend might have been romantically involved. The month before the murders, Lucero's ex-girlfriend received treatment at a hospital because, according to her, Lucero beat her and held her captive for over a week.  The murders occurred late at night, and witnesses saw Lucero leaving the male victim's apartment early the next morning.  After the murders, Lucero made inculpatory statements to fellow inmates and provided law

1

enforcement with information about the murders that was not public knowledge.

¶ 4     DNA evidence was collected from the crime scene, including from beneath the male victim's fingernails and from blood splatter on the wall.  Lucero was ruled out as a donor of this DNA.  Nevertheless, the jury found him guilty and the court imposed a controlling sentence of two consecutive life terms.

¶ 5     In 2004, Lucero filed his first motion for additional DNA testing.  The postconviction court denied it without a hearing and without appointing counsel.

¶ 6     In 2024, Lucero filed a second motion for additional DNA testing — the motion at issue in this appeal.  In it, he sought to retest various samples from the crime scene and test for the first time samples from elsewhere.  Again the court denied the motion without a hearing and without appointing counsel.

¶ 7     Lucero appeals, arguing that he was entitled to a hearing and appointed counsel on his second motion.  We disagree.

## II.     Appeal

¶ 8     We review a postconviction court's ruling on a motion for DNA testing as a mixed question of fact and law.  *People v. Thompson,*

2

2020 COA 117, ¶ 24.  This means we review the court's factual findings for clear error and review the court's legal conclusions de novo.  *Id.*

¶ 9    One of the required elements for postconviction DNA testing is a reasonable probability that the defendant would not have been convicted if favorable results had been obtained through the requested DNA testing at the time of the original prosecution.  § 18-1-413(1)(a).  It is the defendant's burden to allege "specific facts" and support a "prima facie showing" that this and other required elements are met.  § 18-1-412(2), C.R.S. 2025.  The postconviction court may deny a motion without a hearing or appointing counsel if the motion, files, and record show that the defendant is not entitled to relief.  § 18-1-412(3).[1]

### A.    Already-Tested Samples

¶ 10    In his 2024 motion, Lucero sought to retest samples taken from beneath the male victim's fingernails and from blood on the

---

[1] We recognize that this is Lucero's second motion for postconviction DNA testing, and the Attorney General argues that it is barred for various reasons.  We express no opinion on this issue and instead conclude that the postconviction court properly denied the motion on its merits.

3

wall of the crime scene. The postconviction court found that these previously tested samples showed that they did not include Lucero's DNA but did include the DNA of an unknown person. In other words, the results of these DNA tests were favorable to Lucero, yet the jury convicted him anyway. As the postconviction court put it, "If the jury already was aware that DNA of an unknown person was at the crime scene and still convicted Defendant then it is not reasonable to believe they would have reached a different result if the DNA matched another person." We agree and conclude that the record shows that Lucero is not entitled to additional testing of these samples because there is no reasonable probability that favorable results would have affected his conviction.

## B. Samples Never Tested

¶ 11 Lucero's motion also sought to test for the first time (1) his ex-girlfriend's purse that was found in a public park while he was incarcerated and (2) a knife and two knife sheaths that the male victim's neighbor provided to police. Lucero characterized the neighbor as an alternate suspect and implied he might be the actual murderer.

4

¶ 12 As for the purse, Lucero did not fully explain in his motion why favorable DNA test results on it would have changed the outcome of his trial. He argued only that the real killers must have left it in the park, and "[c]ommon sense supports that the purse couldn't have been there for more than a few minutes and the inference suggests that [the neighbor] left it there to mock the police or to hint or indicate that they had arrested the wrong person." But we fail to see how discovering the neighbor's or anyone else's DNA on the purse would have changed the outcome of the trial. There was no dispute that the neighbor and Lucero's ex-girlfriend were acquainted, and unlike Lucero, the neighbor could not be excluded as a contributor to some of the DNA found at the crime scene. The jury also heard that an unknown person's DNA was found at the crime scene. Lucero did not explain why finding the neighbor's or anyone else's DNA on the purse, which was not linked to the crime scene, would have changed the outcome of the trial. We therefore conclude that the postconviction court properly denied Lucero's request to test the purse.

¶ 13 Turning to the knife and sheaths, Lucero did not specify how these items are related to the murders or how favorable DNA test

results would have impacted his case. These items belonged to the neighbor, so they would be expected to have his DNA on them. We cannot tell if Lucero's contention is that these items were used in the murders and would therefore have the victims' DNA on them. All he said in his motion is, "The victims were allegedly stabbed and [the neighbor] gave the police one knife and two sheaves [sic] with no explanation as to what happened to the knife that belonged to the empty sheave [sic]."

¶ 14 As the postconviction court observed, Lucero provided no specific facts to support his possible implication that these items were related to or involved in the murders. We therefore conclude that Lucero's motion failed to meet his burden of alleging specific facts supporting a prima facie showing that favorable DNA test results on these items would have changed the outcome of this trial.

### III. Disposition

¶ 15 The postconviction court's order is affirmed.

JUDGE FREYRE and JUDGE YUN concur.

6